### F. E. Leeds v. Illinois State Medical & Surgical Institute, et al.

1. INJUNCTION—*what essential to maintenance of.* In order to maintain a bill for injunction it is essential that the complainants aver either an interest in the subject-matter or a damage resulting or likely to result from the alleged misconduct or threatened misconduct of the defendants.

2. INJUNCTION—*verification of, held insufficient.* A verification of a bill for injunction as follows : " F. E. Leeds being first duly sworn on his oath states that he has read the foregoing bill and that the facts there stated are true except in so far as the same are stated upon information and belief and of those he believes to be true,"—is insufficient.

Injunctional proceeding. Error to the Circuit Court of Moultrie County; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed October 9, 1905.

R. M. PEADRO, for plaintiff in error.

H. T. WILCOXON and DOVE & DOVE, for defendants in error.

MR. JUSTICE BAUME delivered the opinion of the court.

Plaintiff in error prosecutes this writ of error to reverse a decree of the Circuit Court of Moultrie County dismissing upon demurrer, for want of equity, a bill for injunction filed by plaintiff in error and 190 other persons, residents of the State of Illinois, against defendants in error, and from the order assessing damages of $150 to defendant in error, William Truitt, upon the dissolution, on motion, of the temporary injunction theretofore granted.

The bill alleges that the Illinois State Medical and Surgical Institute is a corporation of this State, organized August 7, 1901, and having its principal office in the city of Chicago; that at the time of the organization of said corporation C. N. Hopkins was president, Warren Winslow was secretary and H. Janss was treasurer; that defendant in error, William Truitt, is a banker residing and doing business at Findlay, Illinois. The bill further alleges that the defendant corporation, through its agents and solicitors, pretended to be engaged in the practice of medicine, healing the sick, etc.; that the method of said corporation in doing such business is to send a representative to visit, and make an examination of sick and afflicted persons and contract in writing with such persons, their parents or relatives, for a permanent cure; that it is stipulated in such contract that said person or some one in his or her behalf shall execute and deliver to said corporation, or to one of its officers, a note, the amount of which varies from $25 to $500; that upon the execution and delivery of such note, the said corporation guarantees in writing that said note shall become void and of no effect and the maker thereof shall not be required to pay the same unless a permanent cure is effected; that immediately upon receipt of said notes, the said corporation and its officers seek to sell, assign and transfer said notes so taken before maturity, in order that a defense may not be made by the parties so signing said notes and holding said guarantee contracts. The bill further alleges that the defendant Winslow is not a practicing physician and has no right under the laws of the State of Illinois to make examination of

afflicted persons and prescribe for any ailments; that in many cases said Winslow makes such examinations, gives prescriptions and professes to treat such patients; that the defendant Hopkins is not a licensed physician in the State of Illinois and entitled to treat persons afflicted or prescribe for them under the laws of this State; that of the persons composing said corporation the only one who is a licensed physician under the laws of this State is the defendant H. Janss, who resides in the city of Chicago. It is further alleged that in many cases, the exact number of which. are unknown, the only pretended treatment given by the defendant corporation or its members, for the ailments, is sugar pills; that said corporation has no laboratory or other place for mixing or preparing medicines, and is simply engaged in swindling the People of the State of Illinois; that in many cases after procuring the said note nothing more was heard from said corporation or any of its members, except requests to pay said notes before they became due and the sending of some mixture or pretended medicine of little or no value and giving little or no relief to the patients.

The bill further alleges, that the defendant William Truitt purchased or pretended to purchase several of said notes from said corporation on or about June 28, 1904, amounting, to-wit, to about $4,000; that said purchase or pretended purchase was made at a large discount; that the said Truitt at the time of the purchase of said notes was in the city of Chicago at the headquarters of said corporation and then and there ascertained the manner and method of doing business by said corporation as aforesaid, and if inquiry had been made by him at such time he would and could have ascertained that said notes were taken from the various parties and a written guarantee for a permanent cure delivered to the parties executing said notes as above set forth, and would have further ascertained that the said corporation and its members were assigning or attempting to assign said notes before maturity in order that such defenses might be cut off, and that said Truitt took said

notes subject to all defenses with full knowledge, or he might have ascertained full knowledge of such defense at the time of purchase aforesaid; that the complainants join in one suit for the purpose of preventing a multiplicity of suits throughout the State of Illinois and in more than fifty different counties thereof.

The bill further alleges that the cause of action is similar in each and every case; that the notes are virtually the same except the names, amounts, date and time of maturity and rate of interest; that the contracts for permanent cure and restoration to health are all the same or nearly so in each and every case, and that the same may be all adjusted in this one litigation; that complainants fear that unless the defendants are restrained by order of the court from selling, assigning or disposing of said notes they will be assigned, sold and transferred to parties who have no knowledge whatever of the defenses thereto. The bill concludes with a prayer for an injunction restraining the defendants from selling, assigning or transferring said notes and requiring the defendants to bring said notes into court for the purpose of having the same canceled and surrendered up to the makers thereof.

The bill is verified as follows : " F. E. Leeds, being first duly sworn, on his oath states that he has read the foregoing bill and that the facts there stated are true, except in so far as the same are stated upon information and belief, and of those he believes to be true—."

Obviously the bill is crudely prepared and wholly insufficient on demurrer. It does not appear from the allegations of the bill that the complainants have any interest whatever in the subject-matter of the litigation. It is not alleged that the defendant corporation, or any of its officers, ever examined, prescribed for, or treated the complainants, or any of them, for any ailment, real or pretended; that the complainants, or any of them, ever gave to the defendant corporation or its officers, any note or obligation at any time or for any amount whatever; that all of the complainants were not permanently cured of their ailments, if any

they had; that the notes alleged to have been purchased by defendant in error Truitt, were notes of the complainants or any of them.

The bill alleges in general terms, the methods employed by the defendant corporation and its officers, and characterizes the same as fraudulent and swindling, but does not allege that the complainants, or any of them, were in any manner connected with such methods, or prejudiced thereby. If the allegations of the bill in the respects indicated had been sufficient, it would be subject to demurrer upon the ground of multifariousness (Crawford-Adsit Co. v. Fordyce, 100 Ill. App. 362), and because it was not properly verified. Neil v. Oldach, 86 Ill. App. 354.

The injunction was properly dissolved for want of equity appearing upon the face of the bill, and defendant in error Truitt was entitled to have the amount of attorney's fees he had rendered himself liable to pay for services in procuring the dissolution of such injunction, assessed as damages against the complainants. The chancellor heard evidence of such services and of the usual and customary charge therefor, and the proof justifies the amount fixed in the order.

The complainants having elected to abide by their bill, the same was properly dismissed for want of equity. The decree dismissing the bill for want of equity, and the action of the court in dissolving the injunction upon motion and assessing damages will be affirmed.

*Affirmed.*